ROLAND L. BELSOME, Judge.
 

 b The question before us is whether the trial court erred in dismissing Mario Mass’
 
 *521
 
 medical malpractice claims for failure to obtain an expert.
 

 Mr. Mass sought an evaluation from Dr. Bradley Bartholomew for back pain. Mr. Mass’ complaints included difficulty sleeping; stabbing, sharp throbbing, pulsing, intermittent pain; and limitations on the distances he was able to walk. Dr. Bartholomew reviewed Mr. Mass’ previous MRIs and determined he had disc hernia-tions at L4-5.
 

 Dr. Bartholomew ordered an additional MRI for an updated assessment of Mr. Mass’ condition. That MRI revealed “isolated pathology at L4-5, along with large, broad, posterior protrusion that projects into central canal and severely compromises thecal sac.” At a follow up visit, Dr. Bartholomew recommended surgery, discussing fusion and/diseetomy as options. Within weeks of that recommendation, Mr. Mass underwent a “right L4-5 discectomy with right L-4 laminectomy, and an L4-5 interbody fusion with autologous bone chips.”
 

 |2The following day, a repeat MRI showed a “large recurrent possible residual disc at L4-5 and stenosis at L3-4.” Dr. Bartholomew recommended a “repeat dis-cectomy and total laminectomy at L4.” Mr. Mass agreed to the subsequent procedure.
 

 One year later, Mr. Mass filed a complaint with the Louisiana Patients’ Compensation Fund (PCF). In that complaint he alleges that St. Charles General Hospital and Dr. Bartholomew breached the applicable standards of care by 1) failing to obtain informed consent for the procedures at issue; 2) failing to adequately train and supervise its employees and physicians in the care of patients undergoing a discectomy and/or a laminectomy; 8) failing to provide appropriate medical care; and 4) failing to have the appropriate equipment and staff necessary to provide care. After discovery the medical review panel unanimously concluded that the evidence did not support that there was a deviation from the standard of care by the hospital or Dr. Bartholomew. Subsequent to the panel’s opinion, Mr. Mass filed the instant lawsuit against St. Charles General Hospital and Dr. Bartholomew.
 
 [1]
 

 Because Mr. Mass had not identified an expert at the medical review stage of the case, the defendants propounded additional discovery asking him to identify the expert witnesses that were going to be called to support his claims. That additional discovery was submitted on March 22, 2006, but went unanswered. On September 28, 2006, St. Charles General filed a motion for summary judgment based on plaintiff’s failure to obtain a qualified medical expert.
 

 |sSt. Charles General’s motion for summary judgment was originally set for hearing on January 12, 2007, but was continued at the plaintiffs request. The hearing was reset for February 9, 2007. On the hearing day, issues were raised regarding Dr. Bartholomew’s employment status at the hospital. The trial judge deferred any ruling on the issues allowing St. Charles General time to supplement its motion for summary judgment with additional documentation.
 

 In the interim, Dr. Bartholomew filed a motion for summary judgment. On July 25, 2008, the parties appeared for hearing of St. Charles General’s and Dr. Bartholomew’s motions for summary judgment. Mr. Mass was still without an expert witness, but presented the trial court with the affidavit of Maria Barrayo, his ex-wife. The trial court rejected the affidavit as untimely and granted summary judgment in favor of the defendants.
 

 
 *522
 
 On appeal Mr. Mass argues that the trial court was manifestly erroneous in granting the defendants’ motions for summary judgment because an expert witness is not necessary in this case. He also contends that the trial court erred when it failed to consider his ex-wife’s affidavit as evidence to overcome the summary judgments.
 

 This Court’s review of the record on a motion for summary judgment is
 
 de novo.
 

 The burden of proof for a plaintiff in a medical malpractice case is set forth in La. R.S. 9:2794 A.
 
 [2]
 
 The statute requires the plaintiff to establish the standard of |4care applicable to the doctor, a violation by the doctor of that standard of care, and a causal connection between the doctor’s alleged negligence and the plaintiffs injuries resulting there from.
 
 Pfiffner v. Correa,
 
 94-0924 (La.10/17/94), 643 So.2d 1228, 1233. These requirements are generally satisfied by expert medical testimony. However, jurisprudence has recognized exceptions in instances of obvious negligence, these exceptions are limited to “instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician’s conduct as well as any expert can.”
 
 Id.,
 
 at 1234; see also,
 
 Williams v. Memorial Medical Center,
 
 03-1806 (La.App. 4 Cir. 3/17/04), 870 So.2d 1044.
 

 Mr. Mass contends that this case is one that can be determined without expert testimony citing to
 
 Williams v. Metro Home,
 
 02-0535 (La.App. 4 Cir. 5/8/02), 817 So.2d 1224. In
 
 Williams,
 
 a paraplegic developed bed sores due to the neglect of his home healthcare nurse.
 
 Id.
 
 Certain obvious acts of negligence such as those set forth by the Supreme Court in
 
 Pfiffner
 

 [3]
 

 may not need expert testimony; however the negligence and damages complained of in this case are not as evident. Therefore, an expert witness is imperative to Mr. Mass’ case. He must present more than mere allegations to overcome summary judgment. See
 
 Smith v. MacArthur Surgical Clinic,
 
 610 So.2d 245 (La.App. 3 Cir.1992). Without evidence establishing the standard of care and the breach of that standard, he is unable to prove essential elements of his case, and therefore cannot satisfy his burden at trial. La. C.C.P. art. 966 C(2).
 

 The trial court had previously informed Mr. Mass that he needed to obtain an expert witness if he was going to maintain his cause of action. At the hearing for the summary judgments, on July 25, 2008, Mr. Mass still had not obtained an expert wit
 
 *523
 
 ness, but rather offered an affidavit from his ex-wife. The trial judge found the affidavit to be untimely and did not allow it to be entered into evidence, which decision was within her discretion and consistent with Uniform District Court Rule 9.9(b) and La. C.C.P. art. 966(B). Also see,
 
 Buggage v. Volks Constructors,
 
 06-0175 (La.5/5/06) 928 So.2d 536.
 

 Finding that Mr. Mass would not be able to meet his burden of proof at trial without an expert witness, the motions for summary judgment were granted in favor of St. Charles General Hospital and Dr. Bradley Bartholomew. Mr. Mass’ claims were dismissed with prejudice. We do not find that the trial court erred in its rulings. Accordingly we affirm.
 

 AFFIRMED.
 

 [1]
 

 . Mr. Mass' Petition for Damages was filed on November 15, 2005.
 

 [2]
 

 .
 
 La. R.S. 9:2794 A reads in pertinent part:
 

 A. In a malpractice action based on the negligence of a physician ... the plaintiff shall have the burden of proving:
 

 (1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, . .. under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians ... within the involved medical specialty.
 

 (2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
 

 (3)That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.
 

 [3]
 

 . "Expert testimony is not required where the physician does an obviously careless act, such as fracturing a leg during examination, amputating the wrong arm, dropping a knife, scalpel, or acid on a patient, or leaving a sponge in a patient's body, from which a lay person can infer negligence.”
 
 Pfiffner, supra,
 
 643 So.2d at 1233.